## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Lea O'Gara,**

*Plaintiff,*

v.

**Chex Systems, Inc.,**
**Clarity Services, Inc.,** *and*
**FactorTrust, Inc.,**

*Defendants.*

Case No.: **8:21-cv-00525-SCB-CPT**

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT & JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Lea O'Gara** ("**Ms. O'Gara**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Chex Systems, Inc.** ("**Chex Systems**"), **Clarity Services, Inc.** ("**Clarity**"), and **FactorTrust, Inc.** ("**FactorTrust**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. O'Gara against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.     The Defendants are subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

4.     Venue is proper in the Middle District of Florida, because the acts complained of were committed and / or caused by the Defendants within this district.

## PARTIES
### Ms. O'Gara

5.     **Ms. O'Gara** is a natural person residing in Tampa, Hillsborough County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Chex Systems

6.     **Chex Systems** is a Minnesota corporation with a primary business address of **601 Riverside Avenue, Jacksonville, FL 32204.**

7.     Chex Systems is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324**.

### Clarity

8.     **Clarity** is a Delaware corporation with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

9.     Clarity is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

### FactorTrust

10.    **FactorTrust** is a Delaware corporation with a principal business address of **P.O. Box 3653, Alpharetta, GA 30023**.

11.    FactorTrust's Delaware registered agent is **Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808**.

12.    Each of the Defendants is a *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

### FACTUAL ALLEGATIONS

13.    Chex Systems is a large, nationwide CRA which maintains detailed files on consumer check writing habits, bank account openings and closings, and issues relating to checking account closures due to repeated overdrafts, fraud, or other reasons.

14.    Likewise, FactorTrust and Clarity are both large, nationwide CRAs which maintain detailed files on consumers, including their employment history,

addresses, Social Security numbers, bank accounts, and history of borrowing, generally from online "payday" lenders.

15.    The Defendants' proprietary data is of paramount interest to virtually all online payday lenders who make loans to consumers in the United States, since most online payday lenders utilize sophisticated underwriting algorithms to ascertain if a consumer is a good risk for an online payday loan.

16.    Many online payday lenders charge interest rates of 700% annually or more for their loans – rates which are illegal in Florida.

17.    Indeed, Section 687.071(3), Florida Statutes, renders the issuance of loans made with annual interest rates greater than **45%** a third-degree felony.

18.    The FCRA at § 1681b(3) restricts a CRA from selling a report about a consumer unless it has reason to believe the person to whom it furnishes the report has a permissible purpose to obtain it.

### "Hamilton Liberty Inc." Inquiry

19.    On September 12, 2019, Chex Systems sold a *Credit Bureau Report* ("**CBR**") regarding Ms. O'Gara to an entity claiming to be "Hamilton Liberty Inc." **SEE PLAINTIFF'S EXHIBIT A.**

20.    FactorTrust also furnished a consumer report concerning Ms. O'Gara to Hamilton Liberty Inc. ("**Hamilton Liberty**").

21.     On information and belief, FactorTrust provided the option for Hamilton Liberty to also obtain a consumer report from Chex Systems – an option which Hamilton Liberty exercised.

22.     Chex Systems then compiled its information into a consumer report, which it provided to FactorTrust.

23.     On information and belief, FactorTrust then provided both the Chex Systems report and its own report to Hamilton Liberty; alternatively, FactorTrust combined the information obtained from Chex Systems with its own information into one single report, which it then provided to Hamilton Liberty.

24.     At the time of the inquiry, Chex Systems knew or should have known that the prospective end user of its consumer report regarding Ms. O'Gara was Hamilton Liberty, and *not* FactorTrust.

25.     Indeed, FactorTrust merely provided the interface pursuant to which Hamilton Liberty requested and obtained a consumer report from Chex Systems.

26.     Hamilton Liberty formerly did business as Tribal Consumer Lending and BestChoice123.com.

27.     These entities made online payday loans to consumers at interest rates of 700% annually and higher – in some cases, as high as 1,825% annual interest.

28.     Tribal Consumer Lending and Bestchoice123.com were supposedly operated by a tiny Native American tribe in upstate California, the Guidiville Band of Pomo Indians.

29.    Federal authorities later determined the business was operated by Charles Hallinan ("**Hallinan**"), also known as the "Godfather of Payday Lending," from his offices in Bala Cynwyd, Pennsylvania.

30.    The "offices" of Hamilton Liberty d/b/a Tribal Consumer Lending and BestChoice123.com on tribal land were – literally – a storage container. **SEE PLAINTIFF'S EXHIBIT B.**

31.    Hallinan claimed that the storage container housed a computer server which "processed" the online payday loans.

32.    Federal authorities later learned the server was a computer that lacked a hard drive and was not connected to the internet.

33.    In 2016, Hallinan was arrested and charged with racketeering, mail fraud, wire fraud, money laundering, aiding and abetting, and other crimes, all of which directly related to his payday lending empire, including Hamilton Liberty.

34.    Hallinan is currently incarcerated in a federal prison and has been serving a 16-year sentence since his 2017 conviction. He was also fined $64 million.

35.    Hamilton Liberty no longer operates as a business.

36.    Despite national news coverage of the convictions by CNN, Reuters, Bloomberg, and other national news outlets covering the criminal acts of Hallinan and his sham companies, including Hamilton Liberty, Chex Systems and FactorTrust are *still* selling reports to some other unknown person or entity, apparently still using the

active subscriber number that previously belonged to the now-defunct Hamilton Liberty.

37.    Indeed, the consumer reports sold by FactorTrust and Chex Systems, regarding Ms. O'Gara, were used by an *unknown End-User*, an entity presumably entirely unrelated to the Guidiville Band of Pomo Indians.

38.    The FCRA at § 1681b(3) restricts a CRA from selling a report about a consumer unless it has reason to believe the person to whom it furnishes the report has permissible purpose to obtain it.

39.    Even assuming, *arguendo*, that Hamilton Liberty was still operating and had a permissible purpose to obtain Ms. O'Gara's credit report, the fact that Hamilton Liberty lied about its identity and about who the real end-user of the report was should have been more than sufficient for Chex Systems and/ or FactorTrust to conclude that its certification of permissible purpose and promise to not use the report for any other purpose could not be trusted.

40.    When Chex Systems and FactorTrust sold the CBRs regarding Ms. O'Gara to "Hamilton Liberty Inc." in September 2019, they had no reasonable basis to believe the report was for legitimate purposes and would only be used by Hamilton Liberty, a company which is no longer in operation, having long ago been exposed as a fraud and whose owner is in a federal prison.

41.    Moreover, the address associated with Hamilton Liberty was 15500 SW Jay St., #28984, Beaverton, OR 97006.

42.    At no point during Hamilton Liberty's operation did it utilize this address, nor any other address in the state of Oregon.

43.    Records of the inquiry also indicate "Telephone Number Not Available" for the supposed lender.

44.    In sum, Chex Systems and FactorTrust had no reason to believe "Hamilton Liberty, Inc.," a business whose owner was in prison, which provided an office address in Beaverton, Oregon, unrelated to the business in connection with its request for the report, and which had no phone number available, somehow had a *legitimate* need for a credit report concerning Ms. O'Gara.

45.    Chex Systems continued to sell reports to whomever – or whatever – is claiming to be Hamilton Liberty well into 2020. *See Daniel Clark vs. Chex Systems, Inc. et al.*, Case 8:20-cv-01609-VMC-CPT, M.D. Fla., July 14, 2020.

46.    FactorTrust and Chex Systems failed to conduct any examination of the prospective end-user of their consumer reports, evidencing their reckless disregard for the rights of consumers when sharing highly sensitive, confidential credit information.

47.    Alternatively, Chex Systems did investigate the actual end-user, learned that Hamilton Liberty was a defunct company, and learned the identity of the true end-user, but then failed to disclose to Ms. O'Gara to whom her credit information was actually being sold.

48.    Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. O'Gara's request of her consumer disclosure, Chex Systems was required to "clearly and accurately" disclose all information in Ms. O'Gara's file at the time of her request.

49.     Had Chex Systems verified the identity of the actual end user of the report sold regarding Ms. O'Gara, such information would be in its file regarding Ms. O'Gara.

50.     However, Chex Systems failed to disclose the actual end user(s) of the consumer report sold regarding Ms. O'Gara, as it indicated the end user was Hamilton Liberty – a defunct company. **SEE PLAINTIFF'S EXHIBIT A.**

### 'Radiant Cash' Inquiry

51.     On October 2, 2019, an entity claiming to be Radiant Cash requested and obtained a CBR regarding Ms. O'Gara from Clarity.

52.     Radiant Cash, operating from radiantcash.com, is an online payday lender that lends to consumers at annual interest rates ranging from 400% to 800%.

53.     Radiant Cash claims to be owned and operated by Ishwaaswi, LLC, which is in turn owned by the Lac Du Flambeau Band of Chippewa Indians ("**LDF Tribe**"), through LDF Holdings, LLC ("**LDF Holdings**").

54.     The LDF Tribe, through LDF Holdings, operates over 50 *tribal lending entities* ("**TLEs**") – all of which supposedly operate from the same office on the second floor of a cigarette store called the "LDF Smoke Shop" at 597 Peace Pipe Road, Lac du Flambeau, WI 54538.

55.     What would logically have to be an office housing hundreds of employees is, in reality, a small building in rural Wisconsin. Photos of the building show no signage or markings indicating any lending activity – or any business activity

other than the sale of untaxed cigarettes and related paraphernalia. **SEE PLAINTIFF'S EXHIBIT C.**

56.     The LDF Tribe engages in what are commonly known as "rent-a-tribe" schemes with dozens of different non-tribal investors. In such schemes, LDF Holdings creates a new TLE, which it supposedly owns and operates. However, the TLE is really owned and operated by the non-tribal investor, who pays a fee between 1.8% and 3% of revenues in exchange for LDF Holdings claiming "ownership" of the lending enterprise and thus, ostensibly, providing tribal sovereign immunity from state usury laws.

57.     One such non-tribal investor in LDF Holdings is **MoneyLion, Inc.** ("**MoneyLion**"). MoneyLion is the true owner and operator of Radiant Cash.

58.     Archived Domain Name Registration records show that on November 11, 2013, radiantcash.com was registered to **MoneyLion LLC**, 11 Patricia Way, Kendall Park, NJ 08824, phone (917) 971-6064, email dc@moneylion.com. **SEE PLAINTIFF'S EXHIBIT D.**

59.     The "dc" in the email address is short for Diwakar Choubey, the CEO of MoneyLion.

60.     The address 11 Patricia Way, Kendall Park, NJ 08824 is Choubey's previous home address. The phone number (917) 971-6064 also belonged to Choubey.

61.     MoneyLion maintains offices in Kuala Lumpur, Malaysia, and New York City, NY.

62.     The online resume of Christopher Loganathan, Software Architect, Selangor, Malaysia, indicates he worked on the Radiant Cash website while employed by MoneyLion as a Senior Software Engineer Team lead. **PLAINTIFF'S EXHIBIT E.**

63.     While at MoneyLion, Loganathan helped develop a "website which manages USA customers loan application via these websites… the first part which is the type of loans offered to customers. The loan products are called as RadiantCash and LionLoans." *Id.*

64.     Thinegan Ratnam is the Director of IT Infrastructure and Security at MoneyLion in Kuala Lumpur, Malaysia, and he also worked on RadiantCash.com while employed with MoneyLion. **SEE PLAINTIFF'S EXIBIT F.**

65.     On his blog, Ratnam states "Moneylion Inc, a short term loans provider. The company managed to release Moneylion.com, Lionloans.com, **Radiantcash.com**." *Id.*

66.     When Radiant Cash asked Clarity for a credit report regarding Ms. O'Gara, Clarity offered Radiant Cash the option of also obtaining a consumer report from Chex Systems, which Radiant Cash accepted.

67.     A record of the resulting inquiry was maintained by Chex Systems. **SEE PLAINTIFF'S EXHIBIT A.**

68.     In response to the inquiry, Chex Systems assembled its information concerning Ms. O'Gara into a consumer report, which it provided to Clarity.

69.     On information and belief, Clarity then provided both the Chex Systems report and its own report to Radiant Cash; alternatively, Clarity combined the information obtained from Chex Systems with its own information into one single report, which it then provided to Radiant Cash.

70.     At the time of the inquiry, Chex Systems was aware that the prospective end-user of its consumer report regarding Ms. O'Gara was "Radiant Cash," and *not* Clarity. *Id.*

71.     Indeed, the Radiant Cash inquiry indicated the report was being sold to the end user "Radiant Cash" in Lac du Flambeau, Wisconsin. *Id.*

72.     Records of the inquiry also indicate "Telephone Number Not Available" for this lender. *Id.*

73.     Despite these red flags, both Clarity and Chex Systems provided a consumer report to MoneyLion, for the purported use by Radiant Cash.

74.     The FCRA, 15 U.S.C. § 1681e(a), requires that "*Every* consumer reporting agency…make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report."

75.     Both Chex Systems and Clarity produced a consumer report based on the information they individually maintained regarding Ms. O'Gara, in response to an inquiry for a purported loan with Radiant Cash – a distinct entity from MoneyLion.

76.     Both Chex Systems and Clarity knew that Radiant Cash was the purported end user of their report.

77.     Chex Systems and Clarity therefore *both* had an obligation to verify Radiant Cash's identity.

78.     On information and belief, Clarity conducted an investigation of **MoneyLion**, and thus knew that MoneyLion – not Ishwaaswi d/b/a Radiant Cash – was the entity actually requesting the consumer report and using the information therein.

79.     Indeed, Chex Systems and Clarity could not have reasonably verified the identity of **Radiant Cash**, as the address provided to them is the second floor of a smoke shop in rural Wisconsin that purports to be shared by dozens of other tribal lending entities, and records of the inquiry indicate there was "no phone number available."

80.     A simple Google search would have revealed that Radiant Cash was attempting to obtain reports with a false address.

81.     When Clarity and Chex Systems sold the CBRs regarding Ms. O'Gara to "Radiant Cash" in 2019, they had no basis, much less a reasonable basis, to believe furnishing a report was permissible, to believe the reports were being requested and provided for legitimate purposes and would only be used by the purported end-user, Radiant Cash.

82.     Indeed, the CBRs were used by MoneyLion, a completely different entity in a different state.

83.    Even assuming, *arguendo*, that MoneyLion itself had some permissible purpose to obtain Ms. O'Gara's credit report, the fact that MoneyLion lied about its identity and who the real end user of the report was should have been more than sufficient for Chex Systems and Clarity to conclude that "Radiant Cash's" certification of permissible purpose and promise to not use the report for any other purpose could not reasonably be trusted.

84.    Clarity, Chex Systems, and FactorTrust are each aware that purported tribal lenders almost always hire non-tribal, third-party "service providers" that are in fact the end-users of the consumer reports.

85.    When the identity of the purported end-user of a credit report cannot be verified because the end-user provides false information about its identity, as a matter of both logic and law, no reasonable person can later rely on the end-user to be honest about its intended use – that it would use the information for the purposes certified and none other.

86.    Despite this, Clarity, Chex Systems, and FactorTrust continue to sell reports to companies claiming to be tribal lenders, without verifying the identities of the purported end-users.

87.    Had Clarity, Chex Systems, and FactorTrust verified the identities of Hamilton Liberty and Radiant Cash, they would have – or should have – determined that these lenders each provided false addresses while Radiant Cash claims a false associations with an Indian tribe in order to provide a veil of tribal affiliation so as to allow the lender to invoke the protections of tribal sovereign immunity.

88.    Upon learning that her personal, confidential credit information had been shared with the aforementioned lenders, Ms. O'Gara suffered extreme mental distress and anguish.

89.    The fact that Chex Systems sold reports concerning Ms. O'Gara to at least two different problematic entities heavily suggests Chex Systems has no reasonable procedures in place to ensure it is selling reports only to entities who have permissible purpose to obtain them.

90.    Indeed, one of the entities did not even exist at the time of the sale.

91.    Ms. O'Gara has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA – *Chex Systems*

92.    Ms. O'Gara incorporates Paragraphs 1 – 91 as if fully restated herein.

93.    Chex Systems violated **15 U.S.C. § 1681b(a)** when it provided reports to "Hamilton Liberty, Inc." and "Radiant Cash," when it had no reason to believe that these purported lenders had any legitimate permissible purpose to obtain credit reports – it knew or should have known that any certification regarding purpose and use was suspect based on its inability to verify basic information concerning these lenders. In the case of Hamilton Liberty, Chex Systems had no reason to believe the lender still existed. In the case of Radiant Cash, it had no basis to believe Radiant Cash of Lac du Flambeau, Wisconsin, was really the entity to whom it was furnishing the report, and

knew, or should have known, it was furnishing a report to MoneyLion of New York simply masquerading as Radiant Cash.

94.     Chex Systems violated **15 U.S.C. §1681e(a)** when it failed to make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report by accepting, without challenge or independent verification, the identities of "Hamilton Liberty, Inc." and "Radiant Cash." Had Chex Systems conducted a reasonable investigation into these lenders, it would have determined that the addresses provided were fictitious and that the purported end-users – the lenders – were not in fact the entities utilizing the information provided.

95.     Alternatively, Chex Systems violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. O'Gara's request for her consumer disclosure by failing to clearly and accurately disclose to Ms. O'Gara, a *Consumer*, all of the information in her file at the time of the request. Specifically, Chex System failed to disclose the true end-user requesting and gaining her personal credit information, after Chex System investigated Hamilton Liberty and learned that Hamilton Liberty could not possibly be the true end-user, as it no longer exists.

96.     Ms. O'Gara has suffered damages in that her personal, highly confidential information, such as her employment history, credit history, address, and Social Security number, has been obtained and used by third party service providers for purportedly tribal lenders charging illegal interest rates in Florida.

97.    Chex Systems' conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA, as evidenced by its complicity in developing a mechanism where it could claim verification through a third-party service provider, even though the FCRA provides no device to relieve it of its investigatory obligations.

98.    As a result of its conduct, Chex Systems is liable to Ms. O'Gara pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. O'Gara respectfully requests this Honorable Court enter judgment against Chex Systems for:

a.    The greater of statutory damages of **$1,000.00** per incident (for a total of **$5,000.00**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. O'Gara's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. §1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper

## COUNT II
## VIOLATIONS OF THE FCRA – *Clarity*

99.    Ms. O'Gara incorporates Paragraphs 1 – 91 as if fully restated herein.

100.    Clarity violated **15 U.S.C. § 1681b(a)** when it provided a report to "Radiant Cash," when it had no reason to believe that this purported lender had any

legitimate permissible purpose to obtain credit reports. Clarity knew or should have known that any certification regarding purpose and use was suspect based on its inability to verify basic information concerning Radiant Cash, as it had no basis to believe Radiant Cash of Lac du Flambeau, Wisconsin, was really the entity to whom it was furnishing the report, and knew, or should have known, it was furnishing a report to MoneyLion of New York simply masquerading as Radiant Cash.

101.    Clarity violated **15 U.S.C. §1681e(a)** when it failed to make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report by accepting, without challenge or independent verification, the identity of "Radiant Cash." Had Clarity conducted a reasonable investigation into this lender, it would have determined that the address provided was false and that the purported end-user – the lender – was not in fact the entity utilizing the information provided.

102.    Ms. O'Gara has suffered damages in that her personal, highly confidential information, such as her employment history, credit history, address, and Social Security number, has been obtained and used by third party service providers for purportedly tribal lenders charging illegal interest rates in Florida.

103.    Clarity's conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA, as evidenced by its failure to properly vet the actual end-users of its reports.

104.    As a result of its conduct, Clarity is liable to Ms. O'Gara pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. O'Gara respectfully requests this Honorable Court enter judgment against Clarity for:

a.    The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000.00**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. O'Gara's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. §1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

### COUNT III
### VIOLATIONS OF THE FCRA – *FactorTrust*

105.    Ms. O'Gara incorporates Paragraphs 1 – 91 as if fully restated herein.

106.    FactorTrust violated **15 U.S.C. § 1681b(a)** when it provided a report to "Hamilton Liberty, Inc.", when it had no reason to believe that Hamilton Liberty had any legitimate permissible purpose to obtain credit reports – it knew or should have known that any certification regarding purpose and use was suspect based on its inability to verify basic information concerning Hamilton Liberty.

107.    FactorTrust violated **15 U.S.C. §1681e(a)** when it failed to make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report by accepting, without challenge or independent verification, the identity of "Hamilton Liberty, Inc." Had FactorTrust conducted a reasonable investigation into this purported lender, it

would have determined that the address provided was fictitious and that the purported end-user – Hamilton Liberty – did not even exist, so it could not possibly be the entity utilizing the information provided.

108.   Ms. O'Gara has suffered damages in that her personal, highly confidential information, such as her employment history, credit history, address, and Social Security number, has been obtained and used by third party service providers for purportedly tribal lenders charging illegal interest rates in Florida.

109.   FactorTrust's conduct was willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA, as evidenced by its failure to properly vet the recipients of its reports.

110.   As a result of its conduct, FactorTrust is liable to Ms. O'Gara pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. O'Gara respectfully requests this Honorable Court enter judgment against FactorTrust for:

a.     The greater of statutory damages of **$1,000.00** per incident (for a total of **$2,000.00**) pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. O'Gara's actual damages for economic and non-economic injuries pursuant to 15 U.S.C. §1681n(a)(1)(A) or 15 U.S.C. §1681o(a)(1);

b.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

c.     Such other relief that this Court deems just and proper

## DEMAND FOR JURY TRIAL

Ms. O'Gara hereby demands a jury trial on all issues so triable.

Respectfully submitted on **May 14, 2021**, by:

**SERAPH LEGAL, P. A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com

1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A     Plaintiff's Chex Systems Consumer Disclosure, January 3, 2021, Excerpt
B     Offices of Hamilton Liberty
C     Image of 597 Peace Pipe Rd., Lac du Flambeau, WI 54538
D     Domain Name Registration Record for radiantcash.com
E     LinkedIn Profile of Christopher Loganathan, Excerpt
F     Blog and LinkedIn Profile of Thinegan Ratnam, Excerpt